[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This legal action was initiated by Kneen M. Williamson (hereinafter plaintiff) against George W. Williamson (hereinafter defendant) alleges the irretrievable breakdown of their marriage and claims a dissolution, alimony, custody, support and related relief. The defendant appeared by counsel and filed an Answer and Cross-Complaint. Various pendente lite matters were heard and orders entered as appears of record. An attorney was appointed for the minor child. The case was eventually claimed for the limited contested list and the issues of custody and visitation were referred to the Family Relations Division of the Superior Court for a study on May 23, 1991.
The case was assigned for trial and heard by this Court at Norwich on August 18, 1992.
In addition to her own testimony, the plaintiff offered the testimony of a William Henry, an appraiser and Maret DiGangi, a Family Relations officer. The defendant testified on his behalf in furtherance of his claims and offered the testimony of Ms. Watts, a child and family therapist.
The plaintiff is a 42 year-old woman who has been married for 22 years to the defendant. She is in perfect health both physically and emotionally according to her testimony. She is fully employed by the Department of Defense as a management assistant having a grade level in the federal civil service of GS-7. She has worked for the government for 11 years. She earns a net weekly wage of $356.57 after provision for taxes, retirement and union dues. CT Page 9101-B She expects to continue in that employment. The government provides a CSRA retirement program (as an alternative to the Social Security) which makes payments to her at retirement age of 65. She indicates the current value of her CSRA is $12,981.00 in her affidavit. She has been receiving an unallocated pendente lite alimony and support order of $325.00 per week from the defendant. While there was some question about the appropriateness of providing a deduction for estimated taxes, her net income is shown on her affidavit from that source as being $280.00. Her total net weekly income from employment and alimony and support at the time of trial was claimed to be $639.57. On the other hand, expenses as itemized by her totalled $670.30.
At the time of the marriage the plaintiff was employed in a dress shop earning approximately $1,200.00 a year and Mr. Williamson, the defendant, was in the Navy earning approximately $3,000.00 a year.
She has received some college training during the marriage but has not received her Bachelor's degree. The defendant received his Bachelor's degree having taken courses towards the same during the course of the marriage. The defendant also has taken additional courses towards his Master's degree during the course of the marriage while the plaintiff was working, providing homemaking services and caring for the minor child of the family. The plaintiff testified that she had been promised by the defendant an opportunity to complete her education after he completed his but that the defendant did not support her in that regard but instead provided additional work for her to do at home which interfered with her education. She does expect in the future to continue her education and feels that with a Bachelor's degree that she would be able to increase her earning capacity.
During the course of the marriage, the testimony suggests that the care of the minor child, born May 7, 1978, and adopted by the parties in April of 1979, was primarily the responsibility of the plaintiff. The minor child, Jeffrey, has Tourette Syndrome and a condition known as Attention Deficient Disorder. At the time of the adoption, the parties were not aware of this situation but soon thereafter he required considerable medical attention and was CT Page 9101-C diagnosed as a child with special needs. Over the years Jeffrey has seen at least 10 doctors and has been hospitalized on occasion, most recently from November 1990 to January 1991. At the present time Jeffrey is attending a special Project Learn school for persons with his condition and is receiving regular therapy with Megan Watts. The therapy with the minor child includes therapy with both of the parents one day a week on alternate weeks.
The plaintiff claimed and the Court finds that the defendant was guilty of inappropriate discipline of the minor child from time to time prior to July 11, 1990 and that even at this time, Jeffrey is hostile and angry when he returns from visits with his father during visitation. The plaintiff also acknowledged that she had spanked the child a couple of times previously and now found it inappropriate or ineffective. The plaintiff objected to the joint custody requested by the defendant because she is not able to communicate with the defendant. In fact she feels afraid of him and claims that he is abusive towards both her and the recommendations concerning visitation to be too generous to the defendant.
With regard to the cause of the breakdown of the marriage, the plaintiff claims that it was the violence of the defendant, his mental abuse and his sexual affair with her best friend which was the principal cause of the breakdown of the marriage. She also claimed the defendant to be manipulative towards her during the marriage and up to the present time. Some details were provided by the plaintiff and the court found the plaintiff to be a credible witness in that regard. She testified about occasions when the defendant punched her in the face or called her names and appeared to her to brag about the sexual relationship he had with her best friend. She claimed the violence occurred about 20 times during the marriage.
The plaintiff also testified that the defendant at the time of the separation emptied all the bank accounts of the parties including a bank account which was in the minor child's name which had approximately a $4,000.00 balance. In total, the plaintiff testified and the Court finds that the defendant withdrew $7,035.30 at the time of the separation to clean out the parties bank accounts and leave the plaintiff CT Page 9101-D and their son with no savings or reserve.
The plaintiff testified about the difficult financial situation she has had since the separation including the necessity of borrowing $10,000.00 from her father which she used for taxes, legal retainer and to assist in offsetting weekly expenses. During the same period of time she claimed that the defendant had increased his standard of living by taking trips and buying expensive things like navigational equipment for his boat, new bicycle, raquetball club membership and another automobile.
In support of her testimony, the plaintiff offered several exhibits including the family relations report (plaintiff's exhibit number one) and an appraisal report, checkbook stubs, Electric Boat Credit Union bank records, a promissory note for legal fees, records with regard to stock savings plans (SSIP) of the defendant, tax returns and related items.
On cross-examination, the plaintiff acknowledged that with income taxes added back, her weekly income was $686.00. She acknowledged that the family residence in Ledyard has four bedrooms and a study or five bedrooms. She testified that the defendant took three bedroom sets, couches, tables, linens and dishes with him when he left or subsequent to his separation. She acknowledged that the defendant is current in his payments for the unallocated alimony and support. The plaintiff acknowledged having had a sexual encounter with another man during the marriage in an isolated situation while she was out-of-state visiting with her sister in 1980.
During questioning by the attorney for the minor child, the plaintiff explained the Project Learn school in Deep River, Connecticut, in some detail indicating that Jeffrey was in his second year at the school. She felt that Megan Watts, the therapist, had a good relationships with Jeffrey. During that examination she testified as to the visitation arrangement which she could accommodate.
The plaintiff called William Henry, an appraiser, who indicated his opinion as to the value of the family home at 12 Lynn Drive, Ledyard, as $199,000.00. CT Page 9101-E
The family relations officer, DiGangi, testified in support of the family relations report (plaintiff's exhibit number one) and was cross-examined. The family relations officer did testify that it was important for Jeffrey to have a good relationship with both parents but did not recommend joint custody. She did indicate that Jeffrey had told her he wanted to spend more time with his father. She testified that both parents may have inappropriately disciplined the child in earlier years.
On examination by the attorney for the minor child, the family relations officer indicated that she opposed joint custody because she felt that there was a lack of communication and there were "control issues" involved in the relationship between the parents. She felt strongly that decisions couldn't be made by the parties jointly and that the child would suffer.
The defendant testified in support of his claims. The defendant is 44 years old. He appears to be in good health. He has a Bachelor's Degree in Business Administration and one-third of the credits necessary for a Master's degree. He spent four years in the Navy and was assigned to the submarine service-operating out of Groton, Connecticut. After the Navy service, the defendant was employed in his father's printing business but left after nine months to obtain other employment. He was licensed to self insurance for Equitable in Connecticut and eventually moved to Electric Boat General Dynamics employment approximately 19 years ago. He has progressed from an hourly employee through various supervisory jobs until he is now "manager of engineering". His affidavit submitted at the time of the trial shows he is earning a gross weekly wage of $1,369.00 a week. The deductions which he shows on his affidavit include voluntary savings, bond contribution and club dues. If only taxes and FICA are deducted, the defendant's net weekly income is $924.00. In his financial affidavit the defendant claims weekly expenses of $1,031.00 including $63.00 a week for his boat expenses, $40.00 a week for his entertainment, $25.00 a week for his gifts, and $25.00 a week for miscellaneous expenses. During cross-examination the defendant admitted that some of the items shown on his affidavit did not represent money that he was actually spending. CT Page 9101-F
With regard to the cause of the breakdown of the marriage, the defendant testified that it started in about 1980 and was "evolutionary". He testified after that time he "tried to stick it out" but the parties had sexual problems and difficulties in communications. He did acknowledge that there were five or six incidents of physical altercation but he claimed never to have hit his wife with a closed fist. He also admitted kicking his 12-year-old son in July 1990 because Jeffrey did not follow instructions in connection with bedtime preparation. The defendant testified that the final incident which convinced him a divorce was an appropriate resolution of the situation, was when the parties had a disagreement as to whether they would go to a movie or go to their boat and the plaintiff chose the movie while the defendant chose the boat.
Relating to financial matters, the defendant claims to have had a reduced or diminished lifestyle since the separation. He claims to have borrowed $9,500.00 from his mother for expenses, including furniture and that he intends to pay the same back. He explained not showing that on his financial affidavit by a claimed confusion as to whether or not such debts were appropriately reflected as "liabilities". He testified that his opinion with regard to the value of the 12 Lynn Drive real estate was $250,000.00 which was $50,000.00 reduced from a previous opinion shown on prior affidavits of $300,000.00. He claimed the mortgage on the house was current and introduced an exhibit to show the status on July 31, 1992 (defendant's exhibit number three). He admitted having traded in his debt-free truck which he had at the time of the separation for a Buick automobile which has a loan balance and was one of the expenses shown on his affidavit.
The defendant acknowledged having sexual relations with a friend of the plaintiff which he termed "encounters". He claimed that the incidents were separated by eight years and that it only happened on two occasions. The Court did not find the defendant's testimony credible in that regard.
The defendant testified that he wanted to have joint custody ordered with respect to the minor child so that he could participate in being a parent. He claimed that Jeffrey now spends a lot of time with his maternal grandparents and CT Page 9101-G that he had a good relationship with his son. He testified that there were several activities which he does with his son including skiing, running and biking. He testified that discipline has not been a problem recently and that a verbal warning has been sufficient with no corporal punishment during recent visits.
On cross-examination the defendant acknowledged that he believed that a division of marital assets on a 40%-60% basis with his wife receiving 60 percent would be fair. He persisted in his claim that the value of the house was $250,000.00 and indicated that he would be willing to accept the house as part of his share if the Court divided things in that manner. The defendant testified that the current market value of the SSIP, savings and stock investment plan at his place of employment as of May 31, 1992, was $128,053.40 as shown on plaintiff's exhibit number ten. As of June 30, 1992, which is the most recent balance available to the defendant, the market value is $131,761.00 as shown on plaintiff's exhibit nine. That exhibit also shows the amount available at this time for a hardship withdrawal without penalty as $115,484.00. Plaintiff's exhibit nine on the second page shows the projection of the situation at normal retirement date to provide the defendant with a monthly income for life of $8,002.00 or a one-time lump sum payment of $948,114.00. These figures assume and are based upon the defendant's continued employment until retirement and his continued participation at the same level (as well as the company's continued participation).
With regard to his lifestyle he acknowledged (on cross-examination) that subsequent to the separation he had suffered gambling losses of $1,200.00 during a vacation in California and that he had also taken various trips to Block Island for additional vacations. He acknowledged having bought a Loran navigational system for his boat and also a stereo system for his apartment which cost $1,100.00. He also acknowledged that the condominium at which he chose his apartment has a swimming pool and a weight room as part of the accouterments. The defendant acknowledged having made a "withdrawal" from his SSIP plan in 1991 after the separation when he withdrew $19,992.00 (plaintiff's exhibit 12). He claims that the funds withdrawn were completely used by him in connection with setting-up a new apartment, among other CT Page 9101-H things, and that these funds were necessary in addition to the $9,500.00 he borrowed from his mother.
With regard to the relationship with his wife and the visitation question, the defendant explained an incident where Jeffrey was required to have pills with him during his visitation because of an illness and there was no conversation about the same, just a written note. In that connection, the defendant acknowledged that he is "uncomfortable talking with her" and he felt that he did not discuss the pills with the plaintiff because it was her obligation to bring it up first, not his. He denied being a heavy drinker of alcoholic beverages but admitted buying a couple of six-packs every other week. He explained a $90.00 disbursement from his checkbook to a liquor store because he needed to "stock" his apartment with liquor.
Also during cross-examination the defendant acknowledged that he only recalled three occasions when the parties had fights in his deposition but that now during the trial testimony he said there were five or six.
The defendant acknowledged during his cross-examination that notwithstanding a court order requiring him to do so (entered on September 4, 1990), the defendant has not restored the $4,000.00 he withdrew from the minor child's savings account at the time of the original separation. He did indicate on questioning by his attorney that he would replace the $4,000.00 "forthwith". He testified that the funds in that account were placed there from time to time for his son from various funds received including accumulations of things such as the occasional $10.00 bill which would be included in a birthday card for the minor child.
The defendant called Megan Watts as a fact witness (not an expert witness) and she testified that she was a nurse-clinician and also a child and family therapist. She was employed at Project Learn which provided services for the Shoreline communities. She said the children in Project Learn were special needs children with behavioral disorders. She testified that Jeffrey joined the program there in July 1991 and continues at the present time. As part of the program she consults jointly with Jeffrey and one of his parents weekly on an alternating basis. She testified that CT Page 9101-I the conflicts between the parents should come to an end and should not be conveyed to the child. She felt that Jeffrey needed the support of both of his parents and her goal was to get both parents counseling together with Jeffrey but, because of her knowledge of the individuals and their differences, she did not believe that it was practicable that joint counseling be done at this time. She testified that Jeffrey does not do well with transitions.
She thought that Jeffrey would benefit from consistency in the way the parents treated his bedtime, his hygiene, his household chores, and that with Jeffrey repetition was important.
The attorney for the minor child presented no testimony but participated in the examination of the witnesses and in the final oral argument.
Attorney Blanchard, who had been appointed to represent Jeffrey, argued that while joint custody may be ideal, it is not his recommendation in this case because of the position of the parties. He recommended that the Court order sole custody of Jeffrey to his mother and that it would be in the best interest of Jeffrey to do so. He urged the Court to deal with the question of the return to Jeffrey's bank account of the $4,000.00 which had been withdrawn by the defendant father. He made the recommendations with regard to visitation.
In the determination of the orders to be issued in this case, the Court is required to and will take into consideration the factors set forth in Section 46b-81 and46b-82 of the Connecticut General Statutes as well as the provisions of Section 46b-56 of the General Statutes relating to custody. The Court will also consider the family support guidelines, promulgated by the commission for child support guidelines pursuant to Public Act 89-203 as amended.
The principal disparity between the parties with regard to the factors is in the cause of the breakdown of the marriage and the different employability and earning potential of the parties.
With regard to the cause of the breakdown of the CT Page 9101-J marriage, the Court finds that the defendant has been the primary cause of the breakdown of the marriage because of his intransigent attitude displayed during his testimony and found from the evidence. The Court finds that the defendant was overly rigid and inflexible during the marriage in his dealing with the plaintiff and the minor child. The Court finds that his testimony about the sexual relationships he had outside of the marriage, the defendant was less than forthright with the Court. While neither of these parties were an example of perfect behavior during their marriage, in weighing the respective responsibilities for the breakdown the Court finds that the defendant was mostly responsible. It is clear, however, that this is only one of the many factors and may not be overly emphasized in the fashioning of orders by the Court. See Valante vs. Valante, 180 Conn. 528-531 (1980). With regard to the amount and source of income, vocational skills, employability and their opportunities for the acquisition of capital and income in the future, the present earnings of the parties are approximately representative of the disparity between them. The plaintiff's gross weekly earnings are $440.00. The defendant's gross weekly earnings are $1,369.00. The Court finds that this differential may change somewhat depending upon whether the plaintiff is now able to complete her education.
The Court finds that each of the parties contributed substantially to the acquisition, preservation and appreciation in value of the assets according to their respective abilities during the course of the marriage, although the defendant's earnings were more than the plaintiff's, the plaintiff also contributed by maintaining the household and assuming the primary responsibilities for the care of their adopted son, Jeffrey.
Also in fashioning the orders, this Court will consider the appearance, demeanor and attitude of the witnesses as indicated above and the interrelationship of the various orders one to the other.
The Court finds that the marriage between the parties which occurred in Groton, Connecticut on June 6, 1970 is broken down irretrievably. The plaintiff resided continuously in Connecticut for at least 12 months preceding CT Page 9101-K the date of the Complaint on July 11, 1990.
A decree of dissolution is entered and each party is declared single and unmarried.
The Court finds that it is in the best interests of the minor child, Jeffrey, that custody be granted solely to the plaintiff mother and it is so ordered. This is in conformance with the recommendation of the Family Services Unit and the Attorney for the minor child.
With regard to the visitation, the Court orders that the defendant shall have visitation as follows:
 1. Alternating weekends from Friday evening at 5:30 p.m. through Sunday at 7:30 p.m.
 2. Alternating Mondays from 5:30 p.m. to 8:30 p.m. on the Mondays following the weekend that the minor child does not spend with his father. The defendant shall take the minor child to his therapy session when it is scheduled during visitation.
 3. Every Wednesday from 5:30 p.m. to 8:30 p.m. provided that the Wednesday may be rescheduled to Thursday by the defendant with 24 hours advanced notice directly between the parties (not involving the child) for the purpose of resolving scheduling conflicts.
 4. The Monday and/or Wednesday visitation may be extended by the defendant until the following morning when there is no school the next day for Jeffrey, at which time the defendant will transport Jeffrey to a location of Mrs. Williamson's choosing by prior arrangement directly between the plaintiff and the defendant.
 5. One week during the school year when school is not in session, either the winter or spring vacation, by mutual arrangement of the plaintiff and defendant. CT Page 9101-L
 6. All transportation expenses and arrangements shall be the defendant's responsibility.
 7. Father's Day each year the minor child will be with his father. On Mother's Day each year he will be with his mother, notwithstanding the above visitation schedule.
 8. The defendant shall have time on Jeffrey's birthday from 5:30 p.m. to 8:30 p.m. if it falls on a school day or 3:00 p.m. to 8:30 p.m. if it falls on a weekday. If Jeffrey's birthday falls on Father's Day, Mother shall have Jeffrey from 3:00 p.m that day until 8:00 p.m. If Jeffrey's birthday falls on a day which would otherwise have been his father's visitation day, the father will return Jeffrey to the mother at 3:00 p.m. on that day.
 9. Each parent shall have two weeks of uninterrupted vacation time with Jeffrey during the school summer vacation period and will provide notification of the weeks selected to the other parent by May 15 by written notification sent registered or certified mail, return receipt requested. Each parent shall provide the other with the address and telephone at which the child may be reached and shall be given complete telephone access during the vacation with the other parent.
 10. The parents will alternate all legal school holidays that fall on a Monday. If the holiday falls after the defendant's visitation weekend, he will have Jeffrey with him overnight on Sunday and continuing Monday to 8:00 p.m. If the holiday falls on a weekend when the defendant does not have visitation, he will have visitation from Sunday at 7:30 p.m. to Monday at 8:00 p.m.
 11. The defendant shall have alternating Thanksgiving vacation period with the minor child from the afternoon of Thanksgiving Eve to the CT Page 9101-M following Sunday evening at 7:30 p.m.
 12. Each year at Christmas vacation, Jeffrey will be with his mother from December 23 until the morning of December 28 and he shall thereafter be with his father from the morning of December 28 until January 1 at 7:30 p.m.
 13. Special holidays indicated above, summer vacation schedules indicated above, birthdays, Mother's Day and Father's Day as above shall take precedence over the regular visitation schedule. In addition, if the defendant's visitation with Jeffrey falls at a time when Jeffrey has a regularly scheduled school, sporting or extracurricular activity or counseling or therapy session, the visitation shall be restricted to bringing to that activity and participation to the extent appropriate.
 14. No expenses relating to transportation, gifts, or other purchases by the defendant for the benefit of the minor child or in any way relating to the visitation or holiday schedule may be off-set or credited against or in any way reduce the support orders provided for in this Judgment.
 15. The Plaintiff is ordered to provide the defendant with 30 days advance written notice of any permanent change of residence out of the State of Connecticut.
The defendant is ordered to pay to the plaintiff directly for support of the minor child the sum of $245.00 per week by immediate wage garnishment.
The parties shall alternate the state and federal tax exemption for the minor child with the plaintiff having the 1992 tax year exemption and the defendant having the year 1993 with continuing alternating thereafter.
The defendant shall provide medical/health insurance for the benefit of the minor child equivalent to that now CT Page 9101-N available to him at his place of employment and the parties shall be responsible for the unreimbursed or uncovered health related expenses on the basis of a 60%-40% allocation with the defendant paying 60% and the plaintiff paying 40%. The health related expenses shall include but shall not be limited to medical, surgical, dental, ophthalmological, orthodontia, psychological or psychiatric counseling and such expenses as may be incurred because of his Tourette Syndrome and/or Attention Deficit Disorder.
The plaintiff shall be responsible for her own medical insurance and expenses. Provisions of Section 46b-84c shall apply.
The defendant shall pay to the plaintiff the sum of $150.00 per week alimony for a period of ten years or the remarriage or death of the plaintiff or her cohabitation under the statute whichever occurs first. This amount and term shall not be modifiable.
The defendant shall name the minor child, Jeffrey Williamson, as irrevocable beneficiary on a life insurance policy on his life having a death benefit of $100,000.00 with the plaintiff as trustee until the child reaches the age of 18 years old. During that period the defendant shall annually, prior to October 1st of each year beginning October 1, 1992, provide written verification by the insurer of the beneficiary designation and the value. The defendant shall not in any way during that period hypothecate, pledge, borrow against, or reduce in value the death benefits of said policy.
The defendant shall name the plaintiff as sole beneficiary of the $50,000 life insurance policy shown on his financial affidavit until the alimony obligation provided hereunder terminates. The defendant shall provide written notice as above with regard to such coverage and shall not hypothecate, pledge, borrow against or in any way diminish the death benefits during said period.
Each party is ordered to provide the other party with their current address and telephone number in writing to be served by registered or certified mail, return receipt requested, within ten days of any change in the same. Each CT Page 9101-O party is ordered to forward to the other by registered or certified mail, return receipt requested, a signed copy of their federal tax return form 1040 including any W-2, 1099 or other attachments on or before April 15th of each following year during any period that alimony and/or support obligations continue under this Judgment, beginning with the year 1992 on April 15, 1993.
With regard to the division of the marital assets, the Court orders that the defendant's interest in the property at 12 Lynn Drive, Ledyard, Connecticut, shall, by virtue of this Judgment, be transferred, set over and assigned to the plaintiff who shall be responsible for the mortgage debts, taxes, insurance and other operating expenses thereafter accruing and shall indemnify the defendant and save him harmless in connection therewith. The Court finds the said property to have a value of $199,000.00 and to be subject to debts secured by mortgage having an approximate present balance of $143,700.
The plaintiff shall be the sole owner of all household furnishings, furniture and equipment and fixtures in and around the premises of 12 Lynn Drive, Ledyard, Connecticut, the Court finding that the defendant has already adequately provided for his furniture and furnishings by a substantial withdrawal from the marital assets, including his SSIP withdrawal subsequent to the separation.
The plaintiff shall keep and retain as her sole property such interest as she may have in the CSRA pension or retirement plan with the civil service having an approximate value of $12,981.00 and the defendant shall have no claim with regard to the same.
The plaintiff shall keep and retain the 1988 Buick presently utilized by her and shall be fully responsible for all expenses relating to the same and the defendant shall sign such papers as are necessary to transfer the title to the plaintiff.
The defendant shall transfer to the plaintiff by qualified domestic relations order (QDRO) in accordance with a plan which satisfied all applicable federal laws and the General Dynamics retirement plan prepared by, the defendant CT Page 9101-P and/or his counsel in the amount of $64,000 and the Court shall retain jurisdiction over said QDRO for the purpose of clarifying any matter necessary for the enforcement of this order.
The Court orders that the defendant shall release the lis pendens on the family residence within 48 hours of this decision.
The defendant shall be entitled to keep and retain the balance of the SSIP after the above QDRO deduction.
The defendant shall keep and retain as his sole property the, 1990 Sea Swirl boat which the Court values at $15,000.00 and the 1980 Suzuki motorcycle which the Court values at $700.00 (based on the plaintiff's affidavit). The plaintiff is ordered to sign such documents as necessary to transfer title.
The, defendant shall keep and retain as his sole property the IRA at Equitable and Union Trust and his accrued Electric Boat pension benefits as disclosed on his financial affidavit free from any claim of the plaintiff.
The defendant is ordered to deposit $4,000.00 in an account for the minor child, Jeffry, with the mother as trustee within ten days of the decision.
Each party shall keep and retain as their sole property their savings and checkings accounts as shown on the financial affidavit not referred to above and shall be responsible for the debts shown on their respective financial affidavits and shall hold the other harmless from the same.
The Court approves the fee of Attorney Blanchard, the attorney for the minor child, in the amount of $4,803.50 and orders that the present balance of $4,125.00 be paid 70 percent by the defendant and 30 percent by the plaintiff within 60 days.
Each party shall be responsible for their own attorney fees.
Each party shall retain the savings bonds in their CT Page 9101-Q possession having their son's name on them in any capacity which shall be turned over to Jeffrey at age 18 and may not be used to satisfy any obligation created by this Judgment.
Leuba, J.